EVANDER, J.
H.L.D. appeals from an order denying his motion for extraordinary relief from a prior order determining him guilty of two offenses and placing him on six months’ probation. He also appeals from subsequent orders finding him guilty of violating his probation in that such orders were dependent on the validity of the initial order placing him on probation. We conclude that H.L.D.’s motion for extraordinary relief should have been granted because the original trial judge had engaged in improper ex parte communications with a court reporter to obtain the court reporter’s assistance in ascertaining the contents of a CD placed in evidence.
The case commenced when the State filed its petition for delinquency alleging, inter alia, that H.L.D. committed the offenses of aggravated stalking of a minor under sixteen years of age[1] and making harassing telephone calls.[2]
At the subsequent adjudicatory hearing, M.M., the alleged victim, testified that H.L.D. had made repeated threatening calls to her over a two-day period. One of the calls was directed to voicemail, “burned” onto a CD, and then given to a law enforcement officer. M.M. testified that during this recorded call, H.L.D. told her not to go to school, to be afraid of him because he was going to hurt her, and that she “might lose [her] life or get jumped or something at school.”
H.L.D. acknowledged that the recorded telephone call was from him. However, he testified that his purpose in calling M.M. was to get M.M.’s boyfriend’s telephone number because, according to H.L.D., M.M.’s boyfriend had just called and threatened him. H.L.D. denied making any other telephone calls to M.M.
The CD was admitted into evidence. After first hearing the recording, the trial judge stated: “I don’t have any idea what is being said on that tape.” After a second playing, the trial judge stated:
*752 It sounded audible, I’m just going to have to listen to it a couple of times.... Actually, I can understand some of the words. I may have to listen to it a few times to try — to be certain about it. And I’ll listen to it as much as I need to.
At the conclusion of closing arguments, the trial judge advised the parties that he was going to take the recording into the court reporter’s office to listen to it, perhaps at a slower speed, “as many times as I need, to understand it or determine that I’m not able to understand it.”
Approximately thirty minutes later, the trial judge returned to the courtroom and advised the parties that after listening to the CD, he believed that it contained threats to both M.M. and her boyfriend. The trial judge then announced that he found M.M.’s testimony regarding repeated phone calls to be credible. H.L.D. was found guilty of aggravated stalking and making harassing telephone calls, and was placed on probation for six months. Adjudication was withheld.
Subsequently, H.L.D. filed a motion for extraordinary relief pursuant to Florida Rule of Juvenile Procedure 8.140,[3] alleging that the trial judge had improperly sought assistance from a court reporter to ascertain the contents of a CD. The motion alleged that defense counsel learned of these actions from the court reporter after the conclusion of the adjudicatory hearing.
The trial judge ultimately recused himself and an evidentiary hearing was held in front of the successor judge. During the evidentiary hearing, the original trial judge testified that after the parties’ closing arguments, he went to the court reporter’s office where he listened to the CD numerous times. There, a court reporter helped the trial judge “understand what was on the recording.” Specifically, the judge testified that “[t]he portions that I could not understand, she [the court reporter] listened to me — she suggested to me what she thought was said, so I listened to them again.... ” When asked whether the court reporter had assisted him in making a ruling in the case, the judge responded:
Well, let me be clear about my answer. It didn’t assist me in making a ruling. It assisted me in understanding what was being said, and it was from understanding what was being said that I made the ruling.
The successor judge denied the motion for extraordinary relief, determining that the original trial judge had not engaged in prohibited ex parte communications with the court reporter because the Code of Judicial Conduct specifically authorizes a judge to consult with court personnel “whose function is to aid the judge in carrying out the judge’s adjudicative responsibilities.” See Fla.Code Jud. Conduct, Canon 3B(7)(c).[4] We respectfully disagree.
*753 In the adjudicatory hearing below, the trial judge had both fact-finding and adjudicative responsibilities. The court reporter assisted the trial judge in his role as the fact-finder. However, a judge may not independently investigate facts outside the presence of the parties except when expressly authorized by law to do so. See Wilson v. Armstrong, 686 So.2d 647 (Fla. 1st DCA 1996) (Canon prohibiting judges from initiating, permitting or considering ex parte communications excludes all ex parte communications in all judicial proceedings except when expressly authorized by law; trial judge engaged in prohibited ex parte communication when he visited estate’s accountant, without beneficiary, to discuss substantive objections to accounting); see also In re Baker, 813 So.2d 36 (Fla.2002) (judge violated Canon 3B(7) when he solicited ex parte communications from computer experts relating to the issue of damages). Here, H.L.D. and M.M. had given conflicting testimony as to the contents of the CD. The court reporter, in essence, provided the trial court with a third interpretation of the contents of the recording. The “evidence” given by the court reporter was done outside the presence of the parties, without their knowledge or consent, and without the opportunity to challenge the court reporter’s statements.
The State argues that there was no misconduct because the trial judge could have requested the court reporter transcribe the CD, which would have required her to interpret its contents. The State’s argument fails, however, because the parties would have been afforded the opportunity to review any transcript prepared and to challenge same. See, e.g., Hadden v. State, 616 So.2d 153 (Fla. 1st DCA 1993); Singleton v. State, 183 So.2d 245 (Fla. 2d DCA 1966). We also reject the State’s suggestion that any error was harmless. The trial court’s order was based, in part, on information received through improper ex parte communications. We cannot conclude that the result would have been the same had the trial judge not received “assistance” from the court reporter. Wilson, 686 So.2d at 649.
On remand, the order finding H.L.D. guilty of aggravated stalking and making harassing telephone calls, and the subsequent orders finding him guilty of violating his probation are to be vacated and a new *754 adjudicatory hearing is to be held.[5]
REVERSED and REMANDED.
SAWAYA and TORPY, JJ., concur.

. § 784.048(5), Fla. Stat. (2008).

. § 365.16(l)(b), (d), Fla. Stat. (2008).

. Rule 8.140. Extraordinary Relief.
(a) Basis. On motion and upon such terms as are just, the court may relieve a party or the party’s legal representative from an order, judgment, or proceeding for the following reasons:
(1) Mistake, inadvertence, surprise, or excusable neglect.
(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for rehearing.
(3) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of any other party.
(4) That the order or judgment is void.

. Canon 3B(7) provides:
(7) A judge shall accord to every person who has a legal interest in a proceeding, or that person’s lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of *753 the parties concerning a pending or impending proceeding except that:
(a) Where circumstances require, ex parte communications for scheduling, administrative purposes, or emergencies that do not deal with substantive matters or issues on the merits are authorized, provided:
(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and
(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.
(b) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice and affords the parties reasonable opportunity to respond.
(c) A judge may consult with other judges or with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities.
(d) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to mediate or settle matters pending before the judge.
(e) A judge may initiate or consider any ex parte communications when expressly authorized by law to do so.

. It is unnecessary to direct that the case be reassigned because the original trial judge has already entered an order of recusal. We find no merit to the second issue raised on appeal by H.L.D.